

305 Broadway, 14th Floor
New York, NY 10007
Tel: (212) 323-6880
Fax: (212) 323-6881

Gabriel P. Harvis
gharvis@harvisandsaleem.com

Afsaan Saleem
asaleem@harvisandsaleem.com

April 19, 2011

**BY ECF**
Honorable Andrew L. Carter, Jr.
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Abdul Kabba, et al. v. City of New York, et al.*, 10 CV 5606 (JG) (ALC)

Your Honor:

I represent the plaintiffs in the above-referenced matter.  I write in response to defendant City of New York's ("City") letter dated April 5, 2011 and in opposition to the relief requested therein.

The plaintiffs in this civil rights action allege that police officers Jason Barr and Haklin Ng arrested them in the absence of probable cause after the officers failed to apprehend a fleeing civilian.  In its April 5th application, the City purports to seek disqualification of plaintiffs' counsel and his firm because, as a government attorney, plaintiffs' counsel once represented a non-party police officer in an unrelated matter. As set forth herein, the City's application is a tactical ploy and there is no basis for disqualification of plaintiffs' counsel or his firm.

**Legal Standard**

The standard of review on a motion to disqualify is well settled in this circuit:

> Motions to disqualify opposing counsel are disfavored. Disqualification has a serious and immediate adverse effect by denying the client his choice of counsel.  In cases of real ethical violations, there is available comprehensive independent disciplinary machinery to deal with them. Moreover, the courts recognize that disqualification

motions are often interposed for tactical reasons; even where brought in good faith, they result in delay and add to litigation costs.

*Society for Good Will to Retarded Children v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979) (*citing Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979)); *see also Clark v. Bank of New York*, 801 F. Supp. 1182, 1196 (S.D.N.Y. 1992) (Mukasey, J.) ("Motions to disqualify opposing counsel are viewed with disfavor in this Circuit because they are 'often interposed for tactical reasons' and result in unnecessary delay.") (*quoting United States Football League v. National Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (collecting cases)); *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 441 (1985) (Brennan, J., concurring) ("[T]he tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation.").

"The Second Circuit has 'indeed been loathe (sic) to separate a client from his chosen attorney…The delay and additional expense created by substitution of counsel is a factor to which [it has] attached considerable significance …'" *Clark*, 801 F. Supp. at 1196-97 (*citing In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979)); *see also Ullrich v. Hearst Corp.*, 809 F. Supp. 229, 236 (S.D.N.Y. 1992) (Leval, J.) ("The Court of Appeals [for the Second Circuit] has cautioned that motions to disqualify counsel…can inflict serious harm on the party whose lawyer is disqualified 'for in disqualification matters we must be solicitous of a client's right freely to choose his counsel.'") (*quoting Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

The Second Circuit's distaste for the "proliferation of disqualification motions and the use of such motions for purely tactical reasons," persuaded it to hold that the denial of such motions is not appealable, *Armstrong v. McAlpin*, 625 F.2d 433, 437 (2d Cir. 1980) (en banc), a position that was ultimately adopted by the Supreme Court. *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368 (1981).

(a) **The Party Seeking Disqualification Must Make a Substantial Showing**

The party seeking disqualification carries a "heavy burden," *Vegetable Kingdom Inc. v. Katzen*, 653 F. Supp. 917, 922 (N.D.N.Y. 1997), and must meet a "high standard of proof." *Clark*, 801 F. Supp. at 1197 (*citing Evans*, 715 F.2d at 791 and *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)); *see also In re Maritima Aragua, S.A.*, 847 F. Supp. 1177, 1180 (S.D.N.Y. 1994) (Sweet, J.) ("Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted."); *In re Del-Val Financial Corp. Sec. Litig.*, 158 F.R.D. 270, 273 (S.D.N.Y. 1994) (Conner, J.) ("Disqualification is a case-by-case

determination, and the moving party bears a heavy burden of proving facts showing that disqualification is warranted."); *United States v. Rastelli*, 1989 U.S. Dist. LEXIS 593, *3 (E.D.N.Y. 1989) ("because the client's right to his choice of counsel is involved, and also because disqualification motions can easily be abused for tactical purposes, the law places a heavy burden on the party seeking disqualification.").

(b) **Special Rules for Former Government Attorneys**

"When faced with [disqualification] motions, courts look to the provisions of the American Bar Association Code of Professional Responsibility…for guidance." *Crudele v. N.Y. City Police Dep't*, 2001 U.S. Dist. LEXIS 13779, *7 (S.D.N.Y. 2001) (Casey, J.) (*citing Cheng v. GAF Corporation*, 631 F.2d 105, 1058 (2d Cir. 1980) and *Baird v. Hilton Hotel Corp.*, 771 F. Supp. 24, 26 (E.D.N.Y. 1991)).[1]

There are special rules of professional ethics for alleged conflicts involving former government lawyers. Indeed, the New York State Rules of Professional Conduct has a completely separate set of provisions on the subject. Rules of Professional Conduct Rule 1.11 ("RPC 1.11") provides, in pertinent part, that a former government lawyer (a):

1.   [S]hall comply with Rule 1.9(c) [prohibiting disclosure of confidential material];

2.   [S]hall not represent a client in connection with *a matter* in which the lawyer *participated personally and substantially* as a public officer or employee, unless the appropriate government agency gives its informed consent, confirmed in writing, to the representation…; and

                    \*       \*       \*

(c)   Except as law may otherwise expressly provide, a lawyer having information that the lawyer knows is confidential government information about *a person*, acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to *that person* in a matter in which the information could be used to the

---

[1] In 2009, the Canons of the Code of Professional Responsibility in the State of New York were replaced by the New York State Rules of Professional Conduct. However, case law regarding conflicts of former government attorneys "continues to be probative on issues that are analyzed under the new rules." *Filippi v. Elmont Union Free School Dist. Bd. of Educ.*, 722 F.Supp.2d 295, 303 & n.1 (E.D.N.Y. 2010) (internal citation omitted).

> material disadvantage of *that person*. As used in this Rule, the term "confidential government information" means information that has been obtained under governmental authority and that, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and that is not otherwise available to the public.

N.Y. Comp. Codes R. & Regs. tit. 22 §§ 1200.00, *et seq.* (emphasis added).

Courts and legal scholars have recognized the sound reasons for separate rules for former government attorneys. The Second Circuit has stated that unduly strict conflict rules for former government lawyers could "have a serious adverse effect on the ability of Government legal offices to recruit and retain well-qualified attorneys." *Armstrong*, 625 F.2d at 443. Another court has stated "it would be unwise to discourage attorneys from seeking Government positions out of fear that any future in private practice would be unduly circumscribed because of the matters they worked on while with the Government." *United States v. Escobar-Orejuela*, 910 F. Supp. 92, 97 (E.D.N.Y. 1995). Indeed, as one court explained,

> If service with the government will tend to sterilize an attorney in too large an area of law for too long a time, or will prevent him from engaging in practice of the very specialty for which the government sought his service -- and if that sterilization will spread to the firm with which he becomes associated -- the sacrifices of entering government service will be too great for most men to make. As for those men willing to make these sacrifices, not only will they and their firms suffer a restricted practice thereafter, but clients will find it difficult to obtain counsel, particularly in those specialties and suits dealing with the government.

*United States v. Brother*, 856 F. Supp. 370, 375 (M.D. Tenn. 1992) (citation omitted); *see also Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D. D.C. 1984) ("When the motion is based upon an attorney's government service . . . a court must also be wary not to take action which will discourage other attorneys from entering government employ."); *The Former Government Attorney and the Canon of Professional Ethics*, 70 Harv. L. Rev. 657, 668 (1957).

Professor Charles W. Wolfram, a scholar in the area of legal ethics, has stated that former government lawyers should not be disqualified merely because they have

> the advantage of general familiarity with the working of a government agency and expertise in the law applicable to its functions. [This] would effectively disbar the lawyer from too many areas of private practice and unfairly burden government lawyers as compared to other lawyers who have gained their expertise in nondisabling ways, such as appearing against the interests of the government agency.

*Wolfram*, Modern Legal Ethics, § 8.10, pp. 475-76 (West. 1986).

Judge Jed. S. Rakoff reached a conclusion in accord with these principles when the City of New York attempted to disqualify former high-level City attorney Joel Berger from representing a plaintiff in a police misconduct suit. As explained in an October 22, 1998 article in *The New York Times*, "U.S. Judge Allows a Lawyer To Stay in Police Brutality Suit," the City of New York, in 1998, attempted to disqualify Mr. Berger, a former member of the Law Department's Executive Staff, now in private practice, from representing a plaintiff in a police misconduct suit, *Robbins v. City of New York*, 98-CV-5331 (JSR) (S.D.N.Y.). Until 1996, Mr. Berger defended New York City in lawsuits, including police misconduct cases. *Id.*

Judge Rakoff declined to remove Mr. Berger from the lawsuit, stating that he wanted to avoid a ruling discouraging lawyers from entering public service "for fear of being thereafter disqualified from the practice of law in the area of his expertise." *Id.* Stephen Gillers, who teaches legal ethics at New York University School of Law, agreed with Judge Rakoff's reasoning, stating that the City had to be careful because "people are going to think twice about accepting generally lower salaries and less comfortable working conditions in exchange for expertise if they can't use the skill later in private practice." *Id.*

Similarly, in *Kadian McBean, et al. v. City of New York, et al.*, the Honorable Gerard E. Lynch was asked by the City of New York to disqualify former Assistant Corporation Counsel Michael Hueston and his firm as counsel for a class of plaintiffs alleging unlawful strip searches of misdemeanants on Rikers Island due to his work on strip search cases (including a similar class action) during government service. 02-CV-5426 (GEL), 2003 WL 21277115 (S.D.N.Y. June 3, 2003). After full briefing Judge Lynch roundly rejected all of the defendants' arguments for disqualification. *Id.* The same arguments for disqualification of Mr. Hueston and his firm were made by the

City and dismissed by the Honorable Charles P. Sifton in a 25-page decision in the related case of *Spinner v. City of New York,* 01-CV-2715 (CPS).  *Spinner*, slip op. (E.D.N.Y. Aug. 22, 2003).

### (c) The Appearance of Impropriety Is Not The Applicable Standard

The City's disqualification letter motion seems to imply that the mere appearance of impropriety can serve as a basis for disqualification (pp. 3, 5-6).  This is not accurate.  It is well-settled that "[t]he possibility that an attorney's representation in a given case may give rise to an 'appearance of impropriety' is not enough to disqualify." *Carey*, 466 F. Supp. at 724-25 (*quoting Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 370 F. Supp. 581 (E.D.N.Y. 1973), *aff'd* 518 F.2d 751 (2d Cir. 1975)); *see also Nyquist*, 590 F.2d at 1247 (Where "there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases."); *accord Planning & Contol, Inc. v. MTS Group, Inc.*, 1992 U.S. Dist. LEXIS 3004, *4 (S.D.N.Y. 1992) (Conner, J.).

As Judge Michael B. Mukasey has observed:

> If the only 'appearance of impropriety' is a violation of Canon 4 that has already been found devoid of substance, it would be downright perverse to hold that what has been held not to exist nonetheless 'appears.' In fact, the 'question begging' nature of the term 'appearance of impropriety,' Model Rule of Professional Conduct Rule 1.9, has resulted in the Model Rules complete elimination of any such proscription.  Therefore, Canon 9 'should not be used promiscuously as a convenient tool for disqualification when the facts simply do not fit within the rubric of other specific ethical and disciplinary rules.' *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1294 (2d Cir. 1975).  Canon 9 does not confer a roving moral commission to disqualify attorneys based on conduct specifically treated in other Canons.

*Bennett Silvershein Assoc's. v. Furman*, 776 F. Supp. 800, 806 (S.D.N.Y. 1991).

### Facts

In the First Amended Complaint, plaintiffs allege that on August 19, 2010 they were lawfully present in a Queens park when defendants Ng and Barr approached them and falsely accused them of marijuana possession.  ¶¶ 15-20.  Ng and Barr then

searched the plaintiffs and other individuals unlawfully and one of the other individuals, a stranger to the plaintiffs, made a statement to the officers and fled.   ¶¶ 21-24.   As Ng waited with the plaintiffs, Barr chased after the runner but failed to catch him.   ¶¶ 25-26.   After non-party spectators laughed at them, Ng and Barr arrested the plaintiffs with conscious disregard for their innocence.   ¶¶ 27-29. Defendant Sergeant Black verified the plaintiffs' arrests and they were taken to the 103rd Precinct, interrogated, sent to Central Booking and, after approximately thirty-six hours in custody, released without charges.   ¶¶ 30-36.   Based on the City's letter motion and documents produced by it, it appears that the plaintiffs' arrests were administratively assigned to non-party Officer Patrick Agugliaro, who is listed as the "arresting officer" on the complaint and arrest reports.[2]   As the City appears to concede, Agugliaro was not present during or involved in plaintiffs' actual arrests and his role was solely administrative.   Indeed, plaintiff Isaiah Barnes testified at his G.M.L. § 50-h hearing that it was defendant Barr who approached (with defendant Ng), arrested and interrogated the plaintiffs.   *See* Transcript of 50-h Hearing, pp. 9-15, annexed hereto as *Exhibit 2*.

As a government attorney, plaintiffs' counsel was one of four Assistant Corporation Counsels who at various times represented the defendants in *Sankar v. City of New York, et. al.*, 07-CV-4726 (RJD) (ALC), presently pending before Your Honor and Judge Dearie.   The plaintiff in *Sankar* claims that in 2006 she was falsely arrested on two occasions in the context of a landlord-tenant dispute; Officer Agugliaro is alleged to have been involved in one of these arrests and is a defendant in that case.   *See Sankar* Amended Complaint, Docket Entry No. 15, ¶¶ 23-68.   Other than the City of New York, *Sankar* and this case have no common parties.

**Application of Law to Facts**

In reviewing disqualification motions, the Second Circuit has formulated a three-prong test:

> (1) is the moving party a former client of the adverse party's counsel;

---

[2] The City has not produced the handwritten "scratch" draft copies of the complaint and arrest reports.  As such, the identity of the individual(s) who actually prepared these forms is unknown. Further, following plaintiffs' arrests it was defendant Barr who prepared the Property Clerk's Invoices, which purport to list the contraband plaintiffs allegedly possessed.  *See* Property Clerk's Invoices bearing Bates Stamp Nos. NYC16-17, annexed hereto as *Exhibit 1*.

(2) is there a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present suit; and

(3) did the attorney whose disqualification is sought have access to, or was he likely to have had access to relevant privileged information in the course of his prior representation of the client?

*Bennett Silvershein Assoc's*, 776 F. Supp. at 803 (*citing Evans*, 715 F.2d at 789). As set forth above, none of the individual defendants in *Sankar* are parties to this case. Therefore, as to the first question, the only former client at issue is the City of New York. However, when analyzing disqualification motions made by non-parties against former attorneys courts have applied the *Evans* elements. *Scantek Medical, Inc. v. Sabella*, 693 F.Supp.2d 235, 239 (S.D.N.Y. 2008); *Lund v. Chemical Bank*, 107 F.R.D. 374, 376-77 (S.D.N.Y. 1985).

Both *Scantek*, discussed in detail below, and *Lund* involve non-parties seeking to disqualify their former counsel from *deposing them*, not to disqualify counsel from the case generally. *Scantek*, 693 F.Supp.2d at 238; *Lund*, 107 F.R.D. at 375. Indeed, research has revealed no case in this circuit in which a non-party has actually sought the "drastic measure," *Motown Record Corp. v. Mary Jane Girls, Inc.*, 118 F.R.D. 35, 38 (S.D.N.Y. 1987), of counsel's disqualification from the entire case as requested by the City here. It also bears noting that the City does not represent non-party Officer Agugliaro in this case and lacks standing to move on his behalf. N.Y. GEN. MUN. LAW § 50-k(2) (McKinney 2010); *see, e.g., Copantitla v. Fiskardo Estiatorio, Inc.*, 09-CV-1608 (RJH) (JCF), 2010 WL 1327921, *4 (S.D.N.Y. Apr. 5, 2010).

The second question is whether plaintiffs' counsel had personal and substantial responsibility for a matter while at the Law Department that is the "same matter" as the instant case. "Thus, a lawyer should be disqualified *only if* (1) the pending matter involves the *same transaction or set of transactions* between identifiable *parties* and (2) he previously had substantial responsibility for the *same matter* as a public employee." *McBean*, 2003 WL 21277115 at * 2 (*citing Laker Airways Ltd.*, 103 F.R.D. at 29) (emphasis added); *see also Government of India*, 569 F.2d at 739; *Evans*, 715 F.2d at 790; *Mitchell v. Metro. Life Ins. Co.*, 01-CV-2112 (WHP), 2002 WL 441194, *4 (S.D.N.Y. March 21, 2002) (Pauley, J.) ("[I]f the facts giving rise to an issue which is material in both the former and the present litigations are as a 'practical matter the same,' then there is a 'substantial relationship' between the representations for purposes of a disqualification.") (*quoting United States Football League*, 605 F. Supp. at 1459); *Twin Laboratories, Inc. v. Weider Health & Fitness*, 89-CV-949 (MBM), 1989 WL 49368, *5

(S.D.N.Y. May 4, 1989) (Mukasey, J.) ("a lawyer should not be disqualified unless the issues he seeks to litigate privately are identical to or essentially the same as the issues he litigated as a government lawyer, and the connection between the issues involved in his private suit and his former government employment is patently clear."); *see also Scantek*, 693 F.Supp.2d at 240 ("Where, as here, the prior representation is limited to litigation, the issue is whether the material facts in the prior litigations are the same as those involved in the present representation.") (internal citation omitted).

The fact that both cases involve a common area of law, or that the cases involve representation of and suit against the same agency, are not a sufficient basis upon which to find a substantial relationship. *Laker Airways Ltd*, 103 F.R.D. at 40; *see also Twin Laboratories*, 1989 U.S. Dist. LEXIS 4693 at *12 ("In determining whether this case involves the same matter as the [previous] case, the most important consideration is not whether the two actions rely on the same legal theory, but whether the facts necessary to support the two suits are sufficiently similar."). Otherwise, an attorney who represented the City of New York could never again participate in a matter involving the City or any of its agencies. *Laker Airways Ltd.*, 103 F.R.D. at 40; *see also International Union, UAW v. Nat'l Caucus of Labor Comm.*, 466 F. Supp. 564, 571 (S.D.N.Y. 1979), *aff'd* 607 F.2d 996 (2d Cir. 1979), *cert. denied* 444 U.S. 839 (1979) (noting that the mere fact that an attorney has been previously employed by a government agency does not create the "type of appearance of evil" generally thought to violate Canon 9 in the absence of a showing that the attorney exercised "substantial responsibility" over the "same matter").

"'If courts cannot find on the facts that substantially related matters are involved or cannot make the inference of confidential knowledge, courts should not rely on Canon 9 to justify a disqualification order.'" *International Union, UAW*, 466 F. Supp. at 572 (*quoting* Note, 44 Fordham L. Rev. 130, 145 (1975)). Instead, "the most important consideration is…whether the facts necessary to support the two claims are sufficiently similar." *General Motors Corp. v. City of N.Y.*, 501 F.2d 639, 651 n.22 (2d Cir. 1974). As the court in *Laker Airways Ltd.* noted: "It is a question of fact whether there is a substantial relationship between the present litigation and a previous matter or cause of action…. The focus of the inquiry is on the precise nature of the relationship between the present and former representations." 103 F.R.D. at 38 (internal citations omitted). "[O]nly if the facts occasioning the need for advice have a substantial bearing in this suit" is disqualification required. *Id.* at 39.

With respect to the third prong of the test, the court must determine whether counsel would have had access to relevant privileged information as a result of his involvement in the prior case. Even though there may be an inference of access to privileged information and client secrets that can be drawn from an attorney's prior

9

representation, the Second Circuit has cautioned that this "inference is rebuttable" and that the standard of proof necessary to rebut such an inference should not become "'unattainably high.'"  *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 754 (2d Cir. 1975) (*quoting Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied* 350 U.S. 932 (1956)). As the court in *Laskey* stated:

> It will not do to make the presumption of [access to] confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high.  This is particularly true where as here, the attorney must prove a negative, which is always a difficult burden to meet.

224 F.2d at 827.  Thus, where an attorney has sworn that he "was privy to no confidential information concerning [an agency]…and that he received no confidential information relevant to this proceeding … [h]is showing is not overcome" by vague suppositions and innuendo raised by defendants.  *Laker Airways Ltd.*, 103 F.R.D. at 40; *see also International Union, UAW*, 466 F. Supp at 571 (noting that "[e]ven the testimony of the attorney whose ethical conduct is questioned has been considered sufficient rebuttal").

Moreover, where there has been no showing of a substantial relationship between the matters at issue, disqualification is not automatically required simply because a government attorney had access to possibly confidential materials during the period of his public service.  *See, e.g., Laker Airways Ltd.*, 103 F.R.D. at 31.  "There is no authority for the proposition…that an attorney should be disqualified under the Rule upon the basis of receipt of confidential information when the matter in which he participated was not substantially related to the present litigation."  *Id.* (*citing International Union, UAW*, 466 F. Supp. 564); *see also Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d at 757 (holding that no "client of a law firm can reasonably expect to foreclose either all lawyers formerly at the firm or even those who have represented it on unrelated matters from subsequently representing an opposing party…. Although Canon 9 dictates that doubts should be resolved in favor of disqualification…it is not intended to completely override the delicate balance created by Canon 4").  Thus, where the former client cannot establish that the documents to which the attorney may have had access during his prior representation "are in any way material to this lawsuit,…or even that [the attorney] had actual knowledge of the contents of those documents or was familiar enough with them to be able to use them to the prejudice of defendants," disqualification is not required. *Laker Airways Ltd.*, 103 F.R.D. at 31.

The case in this circuit most analogous to the instant facts is *Scantek*. In *Scantek*, the plaintiff moved to compel compliance with a deposition subpoena it had served upon a non-party. *Scantek*, 693 F.Supp.2d at 237. The non-party moved to disqualify plaintiff's counsel's firm *from conducting the deposition* on the basis that plaintiff's counsel's firm had previously represented him in at least five matters, he had shared with the firm "many confidences…over the years" and the firm had represented both him and Scantek in the transaction that gave rise to the lawsuit. *Id.* at 237-241 & n.2. The Honorable Henry B. Pitman denied the non-party's disqualification request, holding that "[t]he prior representations simply have no relationship whatsoever to the present dispute-there are no overlapping factual or legal issues, and the prior representations do not involve a general representation of [the non-party] such that his entire background would have been disclosed to [plaintiff's counsel's firm]." *Id.* at 240. In reaching his holding, Judge Pitman relied on *Vestron v. National Geographic Society,* 750 F.Supp. 586, 595 (S.D.N.Y. 1990) and *United States Football League*, 605 F. Supp. at 1459, for the proposition that where – as here – the prior representation was for the limited purpose of litigation and "the [former] client's background is not at issue" in the current case, disqualification is unwarranted. *Scantek*, 693 F.Supp.2d at 239-240 (internal quotation omitted). The *Scantek* court also approvingly quoted *Vestron*'s conclusion: that if prior representation in litigation were sufficient to warrant disqualification in a subsequent unrelated matter, "such a standard would mandate disqualification in virtually every instance of successive representation which clearly is not the law."[3] *Id.* (quoting *Vestron*, 750 F.Supp. at 595) (internal quotation marks omitted).

Here, the City's arguments for disqualification doubly fail. First, there is no basis for the City's conclusion that this matter and *Sankar* are substantially related. The underlying incidents are separated in time by four years and involve the arrests of different individuals for different crimes by different police officers under entirely dissimilar circumstances. *See* First Amended Complaint, ¶¶ 15-36; *Sankar* Amended Complaint, ¶¶ 23-68; *Scantek*, 693 F.Supp.2d at 237; *United States Football League*, 605 F. Supp. at 1460 & n.26. Moreover, the City's suggestion in its letter brief that the cases are related because they allege overlapping constitutional torts (p. 4) is precisely the argument rejected by Judge Lynch in *Mcbean*. 2003 WL 21277115 at *5 (*citing Laker Airways Ltd.*, 103 F.R.D. at 40); *see also Twin Laboratories*, 1989 U.S. Dist. LEXIS 4693 at *12. If the City's standard was adopted, every false arrest case would be substantially related and former government attorneys would be essentially disbarred

---

[3] Notably, Judge Pitman remarked in *Scantek* that, but for the non-party's allegation that plaintiff's counsel had represented both him and Scantek in the transaction that gave rise to that litigation – an allegation that has not been (and could not be) made by the City in the instant case – "resolution of the [disqualification] motion would be easy." *Scantek*, 693 F.Supp.2d at 240.

from their trained practice area.  *See Armstrong*, 625 F.2d at 443.  As the cases are clearly unrelated, the Court need not conduct any further inquiry before denying the City's disqualification request.  *International Union, UAW*, 466 F. Supp. at 572; *Scantek*, 693 F.Supp.2d at 241.

Second, even assuming, *arguendo*, that the Court were to determine that the matters are substantially related, there is no indication that plaintiffs' counsel gained *relevant* privileged information from his work on *Sankar.  See Laker Airways Ltd.*, 103 F.R.D. at 31.  The City's letter brief does not argue that privileged information from *Sankar* might bear on plaintiffs' claims in the instant controversy.  Rather, the City argues (at p. 5) that plaintiffs' counsel's possession of unspecified privileged "information" that "*may* be directly relevant to the testimony [non-party] P.O. Agugliaro will provide in the context of this current lawsuit" warrants disqualification (emphasis added).  However, Officer Agugliaro is not a defendant in this case and thus his conduct is not at issue, his interests are not at stake and RPC 1.11(c) is not implicated.  *See Scantek*, 693 F.Supp.2d at 239-240.  Indeed, the parties appear to agree that Agugliaro's role in the disputed events consisted of, at most, preparing one complaint report and four arrest reports, presumably based on information provided to him by the defendant officers.  There is no allegation in the First Amended Complaint that Agugliaro violated the plaintiffs' rights in any way.

To the extent the City is referring to the potential use of Officer Agugliaro's personnel or disciplinary records, if any, against him at a deposition or trial, such information is not relevant to this action as he is a non-party.  *See, e.g., Lemmo v. Cervini*, 08-CV-2641 (RJD) (LB), 2009 WL 4823389, *1 (Dec. 14, 2009).  Further, the City has offered no evidence that plaintiffs' counsel had sufficient familiarity with such documents to use them in this case and it is respectfully submitted that he did not.[4]  *Laker Airways Ltd.*, 103 F.R.D. at 31.  In any event, the disclosure of non-party Officer Agugliaro in the City's FED. R. CIV. P. 26(a)(1)(A)(i) disclosures does not guarantee that he will ever be deposed or testify at trial (or that plaintiffs' counsel or his firm would seek to conduct the examination) and the City's disqualification motion as to his examination is premature, speculative and far short of the "high standard of proof" required for a disqualification order in this circuit.  *See Clark*, 801 F. Supp. at 1197; *Scantek*, 693 F.Supp.2d at 237.

In point of fact, the relevant authority weighs against even disqualifying plaintiffs' counsel from *examining* non-party Agugliaro (if his deposition or trial testimony should ever be taken) in this case, let alone disqualifying him or his firm

---

[4] Plaintiffs' counsel will provide a declaration attesting to his lack of familiarity with confidential information regarding non-party Officer Agugliaro at the Court's request.

entirely from representing the plaintiffs. *See Id.*; *Ritchie v. Gano*, 07-CV-7269 (VM) (JCF), 2008 WL 4178152 (S.D.N.Y. Sept. 8, 2008) *citing Medical Diagnostic Imaging, PLLC v. CareCore Nat., LLC*, 542 F.Supp.2d 296, 304 (S.D.N.Y. 2008) (in motion to intervene in order to move to disqualify counsel, fact that "[m]ovants are not parties in any litigation connected to these actions ..., [w]hile not dispositive, ... is an important factor in considering the strength of Movants' motion"); *Bonner v. Guccione*, 94-CV-7735 (DLC) (DFE), 1997 WL 91070, at *2 (S.D.N.Y. March 3, 1997) (holding that "plaintiff has been unable to cite any civil case holding it to be improper for an attorney to represent both a defendant and its non-party employees"); *Prisco v. New York*, 804 F.Supp. 518, 520 (S.D.N.Y. 1992) ("While plaintiffs have indeed identified a conflict, it involves non-parties to this action, and accordingly does not require disqualification of [counsel]."); *Gould Investors, L.P. v. General Insurance Co. of Trieste & Venice*, 89-CV-4794 (CES), 1992 WL 42164, at *2 (S.D.N.Y. Feb. 24, 1992) (denying motion to disqualify because alleged conflict "involv[ed] only the representation of a non-party witness at a deposition, where there is a possibility of a divergence of interests"); *United States v. Occidental Chemical Corp.*, 606 F.Supp. 1470, 1474 (W.D.N.Y. 1985); *Markowski v. Markowski*, 2001 N.Y. Slip Op. 40216, 2001 WL 1423133, at *5 (N.Y.Sup.Ct. Aug. 13, 2001) (no conflict where "[plaintiff's] attorneys may have to cross-examine a non-party witness called by [defendant] ... who the firm represented in the past" in an unrelated matter)).

Plaintiffs also note that all of the authority cited by the City in its application is easily distinguishable from the instant facts. The cases the City cites each involve either attorneys *switching sides in the same litigation* (*Crudele v. New York City Police Dep't*, 2001 U.S. Dist. LEXIS 13779 (S.D.N.Y. Sept. 7, 2001) (which the City mischaracterizes as "the very scenario presented here" (p. 5)); *Hull v. Celanese Corp.*, 513 F.2d 568, 572 (2d Cir. 1975)) or the prior representation of a now adverse *party* (*Fernandez v. City of New York*, 2000 U.S. Dist. LEXIS 3503 (S.D.N.Y. Mar. 20, 2000); *Cargill Inc. v. Budine*, 2007 U.S. Dist. LEXIS 48405 (E.D. Cal. June 22, 2007); *Battagliola v. National Life Ins.*, 2005 U.S. Dist. LEXIS 650 (S.D.N.Y. Jan. 19, 2005)). It is respectfully submitted that the City's failure to provide relevant authority evinces an absence of support in the law for the relief it seeks.

Accordingly, it is respectfully requested that the City's application be denied in its entirety.

Thank you for your consideration.

Respectfully submitted,

Gabriel P. Harvis

13

14

Encl.

cc:    ACC Barry Myrvold, Esq.